UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IVAN G. McKINNEY, | : | |
| Plaintiff, | : | Civ. No. 18-8618 (FLW) |
| v. | : | |
| GARY LANIGAN, et al., | : | **MEMORANDUM OPINION** |
| Defendants. | : | |

This matter has been opened to the Court by Plaintiff Ivan McKinney's ("McKinney" or "Plaintiff") filing of a motion to for leave to amend his Complaint and an Amended Complaint. *See* ECF Nos. 29-30. The Court previously provided leave for Plaintiff to submit an Amended Complaint. As such, the motion to amend, ECF No. 29, is dismissed as moot. Pursuant to its screening authority under 28 U.S.C. § 19159(e)(2)(B), the Court dismisses the Amended Complaint in part and proceeds it in part, as explained in this Memorandum Opinion.

I.  **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

a.  **Amended Complaint**

McKinney is a state prisoner at New Jersey State Prison and a frequent filer in this District. The claims in this action arise entirely from McKinney's transportation by van between corrections facilities on November 10, 2015. *See* ECF No. 1.

McKinney alleges that he was picked up at 10am on November 10, 2015 at Bergen County Jail by Central Transportation because he had a court hearing in Bergen County Superior Court the prior day. *See* Am. Complaint at ¶¶ 1-2. Plaintiff was initially picked up by John Doe

1

corrections officers, and he and other prisoners were subsequently transferred to another DOC van driven by Defendants Becker and Burgess. *See id.* at ¶¶ 3-4.

Plaintiff alleges that Defendants Becker and Burgess purposely denied Plaintiff and other prisoners adequate "ventilation," and when Plaintiff asked for the officers to provide more air and told them he couldn't breathe, Becker and Burgess turned the heat on high, turned up the radio, and laughed. *See* Amended Complaint at ¶¶ 4-8. Plaintiff alleges he has prediabetes and high blood pressure, and that the lack of ventilation and/or heat made him feel weak and panicky. *Id.* at ¶¶ 9-10. After Becker and Burgess turned off the radio, Plaintiff begged them to turn on the air, and Defendants Becker and Burgess allegedly stated: "at least I don't rape little girls[.]" Defendants Becker and Burgess allegedly had Plaintiff's "Face Sheet" showing that Plaintiff was convicted of sexual assault, and Plaintiff's contends that their conduct amounts to retaliation and cruel and unusual punishment. *Id.* at ¶¶ 11-15. Plaintiff further alleges that he feared dying from suffocation and that he was "defrauded of proper air" for two hours. *See id.* ¶¶ at 16-17.

When the van reached Bordentown, New Jersey, Plaintiff and one other inmate were transferred onto another van driven by Defendant Corrections Officers Baez and Kempf. *Id.* at ¶ 18. Baez drove the van from Bordentown, New Jersey to CRAF, which is located in Trenton, New Jersey. *See id.* at ¶ 19. Plaintiff alleges that he had been traveling by van for "6 or 7 hours" by the time he reached CRAF.[1] *Id.* at ¶ 20. At CRAF, the other inmate and Plaintiff, who takes water pills for his prediabetes, blood pressure medication, and aspirin, asked to use the restroom, but Defendant Baez cursed and denied their requests. *Id.* at ¶¶ 21-23. Defendant Kempf was in CRAF for three hours, and during this period Plaintiff and the other inmate could not use the restroom. *Id.* at ¶ 24. When Plaintiff and the other inmate asked Baez to use the restroom, they

---

[1] It is unclear why it took this long to get from Bergen County Jail to CRAF.

2

were standing in the stopped van stretching their legs, and Baez starting "rough-riding" the van, slamming on the gas and the breaks, and starting and stopping the van. *See id.* at ¶¶ 25-28. The "rough ride" caused injuries to Plaintiff's back, neck, and knees. *See id.* at ¶¶ 29-30. After the rough ride, Baez laughed and stated that she thought Plaintiff was going to "piss." *Id.* at ¶ 37.

In addition to the claims against Baez, Plaintiff alleges that Kempf, who was not present during the rough ride, had a duty to Plaintiff and knew or should have known that Plaintiff would have to use the restroom during the eight hour period of time he spent in the three DOC vans. *See id.* at ¶¶ 31-36.

Plaintiff further alleges that all the corrections officers acted in concert to retaliate against Plaintiff for asking for ventilation and to use the restroom, and due to his criminal convictions. *Id.* at ¶ 38.

In addition to his claims against the corrections officers, Plaintiff alleges that Sergeant General failed to supervise the corrections officers on November 10, 2015. *Id.* at ¶ 39. Plaintiff alleges that Sergeant General should have known that Plaintiff would need to use the restroom on an eight-hour trip, that Defendant Kempf was wasting three hours of time at CRAF on that date, and that Plaintiff was transferred three times on that date. *Id.* at ¶¶ 40-42. Plaintiff alleges that Sergeant General should have trained the corrections officers not to withhold ventilation or restrooms from prisoners, and not to assault prisoners with rough rides. Sergeant General also should have assured that a one-hour trip did not take eight hours. *See id.* at ¶¶ 43-46. Plaintiff further alleges that the corrections officers had a duty to assure that cameras were working in the van on November 10, 2015. *See id.* at ¶¶ 47-48.

Plaintiff also alleges that DOC Commissioner Gary Lanigan and Assistant Commissioner Betty Norris "failed to train, discipline, and act" and were "aware of the severe harassment,

3

retaliation, and abuse toward McKinney by NJ DOC actors over time." *Id.* at ¶ 49. Plaintiff alleges that he "filed multiple grievances about the severe abuse" and wrote multiple letters to Norris and Lanigan. *Id.* at ¶ 50. According to Plaintiff, "had Lanigan acted or disiplined [sic] past actions, defendants would have acted appropriately." *Id.* at ¶ 51. Plaintiff contends that Lanigan was in charge of "setting policy" for New Jersey Department of Corrections and "failed severely." *Id.* at ¶ 53. Lanigan allegedly "knew or should have known that failing to act, train, and disipline [sic] would send a message that defendant's behavior was accepted by NJDOC." *Id.* at ¶ 54.

Finally, Plaintiff alleges in his Amended Complaint that he was hindered in exhausting his administrative remedies as to his claims arising from van rides on November 10, 2015, and he seeks equitable tolling on his claims. *See id.* at ¶¶ 55-60.

### b. Procedural History

Plaintiff's original Complaint was docketed on April 23, 2018, approximately two years and five months after the November 10, 2015 incident, and he stated in his cover letter that he had originally submitted the Complaint for filing on March 19, 2017.[2] *See* ECF No. 1. The Court granted Plaintiff's application to proceed *in forma pauperis*. ECF No. 10. In response to McKinney's Complaint and cover letter, the Court issued an Order to Show Cause as to why his claims should not be dismissed as untimely. ECF Nos. 13-14. Plaintiff sought an extension of

---

[2] Plaintiff's cover letter to the Clerk of the Court stated that he was "resubmitting" the Complaint because he never heard back from the Court after sending the same complaint to the Court approximately 13 months prior on March 19, 2017. *See* ECF No. 1 at 1. The Complaint submitted by McKinney and docketed on April 23, 2018, was backdated to March 1, 2017. *See id.* at 7. The application to proceed in forma pauperis ("IFP application") submitted by Plaintiff was signed and dated March 19, 2017, and included an uncertified account statement for the period from March 21, 2017 – September 21, 2017. In his Amended Complaint, McKinney states that he is no longer alleging that he submitted his original Complaint on March 19, 2017. *See* Amended Complaint at ¶¶ 62-63.

4

time to respond, which was granted by the Court. *See* ECF Nos. 15-17. Plaintiff responded to the Order to Show Cause and subsequently submitted a letter motion asking the Court to permit his claims to proceed, and several letters with exhibits. ECF Nos. 19, 22, 23-24.

In an Opinion dated December 21, 2021, the Court screened the Complaint for dismissal under 28 U.S.C. § 1915(e)(2)(B), declined to apply the prisoner mailbox rule, found the federal claims in Plaintiff's Complaint untimely under the two-year limitations period for filing a civil rights action, and declined supplemental jurisdiction over the state law claims.[3] *See* ECF Nos. 25-26. The Court noted that Plaintiff may have some basis for equitable tolling but required those facts to be pleaded in the Complaint. *See id.* The Court directed the Clerk to administratively terminate the matter and permitted Plaintiff to submit an Amended Complaint within 45 days that included all the facts he has to support equitable tolling with respect to the claims arising from the incidents on November 10, 2015. *See id.*

Plaintiff sought an extension of time, which was granted by the Court. *See* ECF Nos. 27-28. Plaintiff submitted a motion to amend his Complaint and an Amended Complaint on March 10, 2022. ECF Nos. 29-30.

## II.     DISCUSSION

### a. The Motion to Amend

The Court explicitly provided leave for Plaintiff to submit an Amended Complaint. As such, Plaintiff's motion to amend is unnecessary, and the Court dismisses the motion to amend

---

[3] Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14–2. Because a § 1983 claim is characterized as a personal-injury claim, such claims are governed by the applicable state's statute of limitations for personal-injury claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *see also Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989).

as moot and screens Plaintiff's Amended Complaint for dismissal under § 1915(e)(2)(B). Federal law requires the Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

### b. Timeliness of the Complaint

The Court first addresses whether the federal claims in Plaintiff's Amended Complaint are untimely and subject to dismissal under § 1915(e)(2)(B) on that basis. A District Court can raise the issue of the statute of limitations sua sponte at the screening stage. *See Hunterson v. Disabato*, 532 F. App'x 110, 111-12 (3d Cir. 2007) ("[A] district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable statute of limitations has run."). In his Amended Complaint, Plaintiff has pleaded some facts to suggest that the exhaustion of his administrative remedies as to the claims arising from the November 10, 2015 van rides was delayed or hindered by prison officials. The Third Circuit has held in several decisions that because exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act ("PLRA"), the statute of limitations applicable to § 1983 actions should be tolled while a prisoner pursues the mandated remedies. *Wisniewski v. Fisher*, 857 F.3d 152, 158 (C.A.3 (Pa.), 2017) (citing *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015)). The Court makes no determination about whether *Pearson* and *Wisniewski* control, whether Plaintiff is entitled to tolling on the federal claims in the Amended Complaint, or whether he has sufficiently demonstrated exhaustion of his federal

claims.[4]  In light of Plaintiff's allegations regarding exhaustion, however, the Court will not dismiss the federal claims in the Amended Complaint as time-barred at this juncture and will address Plaintiff's claims on the merits in this screening decision.

### c. The Federal Claims in the Amended Complaint

The Court begins with Plaintiff's constitutional claims brought pursuant to 42 U.S.C. § 1983.[5]  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Importantly, § 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  "The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (internal quotations and citations omitted).  "Next, a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.' " *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Plaintiff first alleges violations of the Eighth Amendment.  A prisoner can assert an Eighth Amendment violation through an excessive deliberate indifference claim or an excessive force claim.  *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986).  Prison conditions can run afoul of the Eighth Amendment's proscription on cruel and unusual punishment by either ignoring

---

[4] At the summary judgment stage, Defendant Baez still may seek dismissal of the Amended Complaint as time barred or for failure to exhaust administrative remedies, if appropriate.

[5] The Court construes Plaintiff to raise his § 1983 damages claims against Defendants in their individual capacities and his § 1983 claims for injunctive relief against Defendants in their official capacities.

"evolving standards of decency" or involving "unnecessary and wanton infliction of pain." *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 171 (1976); *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must prove that the deprivation was sufficiently serious (the objective element), and that the prison officials acted with a sufficiently culpable state of mind (the subjective element). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective element may be satisfied when inmates are deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *accord Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir.1997) (holding that plaintiff's Eighth Amendment claim failed because he "presented no evidence that he was denied basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety"). As to the subjective element for deliberate indifference, the plaintiff must prove that the prison official knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *See Fantone v. Herbik*, 528 F. App'x. 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). In excessive force cases, courts must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

      Plaintiff alleges that Defendants Becker and Burgess purposely denied Plaintiff "ventilation" by refusing to provide turn on the air when Plaintiff requested it, and by raising the heat in the van during a two-hour ride in the van. Under some circumstances, improperly functioning ventilation may state a claim under the Eighth Amendment. *See, e.g.*, *Carty v. Farrelly*, 957 F. Supp. 727, 736, 35 V.I. 400, 412 (D.V.I. 1997) (proceeding Eighth Amendment

claim where ventilation system at the prison did not function properly and "contribute[d] to the breeding and spreading of disease"). Courts have also found that leaving a prisoner in a hot vehicle may violate the Eighth Amendment. *See Patel v. Lanier Cnty. Georgia*, 969 F.3d 1173, 1178-1181 (11th Cir. 2020) (considering claims brought by a pretrial detainee who was left alone in an unventilated, un-air-conditioned transport van on a hot autumn day and the prisoner became unconscious and was hyperventilating); *see also Burchett v. Kiefer*, 310 F.3d 937, 940, 945 (6th Cir. 2002) (considering excessive force claims brought by arrestee left in a police car for three hours in 90-degree heat without ventilation).

Here, however, Petitioner's allegations against Becker and Burgess are insufficient to state a claim for relief under the Eighth Amendment. This incident occurred in November, and it is implausible that Plaintiff was unable to breathe (or faced any serious risk of harm) due to the lack of air conditioning in the running van or because the Defendants turned up the heat. Although Defendants Becker and Burgess behaved poorly and the conditions Plaintiff experienced may have been uncomfortable, Plaintiff fails to provide sufficient facts to suggest that either the inadequate ventilation or the heat threatened his health or safety (or amounted to excessive force). Nor does he provide sufficient facts to suggest that Defendants Becker and/or Burgess knew that refusing to turn on the air or raising the heat in the van would endanger Plaintiff's health and safety. Moreover, Plaintiff's does not allege a physical injury that resulted from this incident, and, therefore, this claim must be dismissed under 42 U.S.C. § 1997e(e). For these reasons, the Court dismisses the Eighth Amendment claims against Becker and Burgess arising from the alleged lack of ventilation.

The Court next considers Plaintiff's claim that the denial of a restroom for eight hours amounts to cruel and unusual punishment. The Court will likewise dismiss this claim because it

does not rise to the level of an Eighth Amendment violation. "As a general matter, the denial of access to a lavatory has been held to offend the Eighth Amendment only where it is unconscionably long or where it constitutes an ongoing feature of an inmate's confinement." *Cook v. Wetzel*, No. 13-6575, 2015 WL 2395390, at *5 (E.D. Pa. May 20, 2015) (citing *Young v. Quintan*, 960 F.2d 351 (3d Cir. 1992), superseded by statute as recognized in *Siluk v. Merwin*, 783 F.3d 421, 435 n. 77 (3d Cir. 2015)). A denial of access to a restroom will thus only implicate an Eighth Amendment violation where the denial is so extended or severe that it "implicates the physical or psychological health of the inmate." *Id.* Generally, a denial of bathroom access for a mere few hours is insufficient to meet this hurdle. *Id.* at *5 (denial of bathroom access for eight hours did not violate Eighth Amendment even where plaintiffs alleged "damage to their bladders"); *see also Evans-Salter v. Wetzel*, No. 19-950, 2020 WL 5819764 at *3 (M.D. Pa. Sept. 30, 2020) (collecting cases finding no constitutional violation for denial of bathroom access for periods between twenty minutes and eight hours at a time); *Shoffler v. City of Wildwood*, No., 2019 WL 4165305, at *12 (D.N.J. Sept. 3, 2019) (denial of bathroom access for a few hours insufficient to violate even the greater protections afforded to detainees not yet convicted). Here, Plaintiff has not shown that he was denied access to a restroom for an unconscionably long period of time. Although Plaintiff appears to allege that he takes medication that makes the more frequent use of the restroom necessary, he provides no facts to suggest that he had a medical pass permitting him to use the restroom more frequently or that Defendants Becker, Burgess, Baez and/or Kempf were aware of Plaintiff's medication or its effects. The Court dismisses Plaintiff's Eighth Amendment claim against all Defendants based on the denial of restroom use.

The Court next addresses Plaintiff's claim that Baez subjected him to a "rough ride" in the transport van after he requested to use the restroom. This type of claim also arises under the Eighth Amendment and may be viewed under either the deliberate indifference or excessive force standard. As noted above, the deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to "a substantial risk of serious harm," and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834, 837–38. In excessive force cases, on the other hand, courts must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. Federal courts have recognized so-called "rough ride" claims under both standards. *See, e.g., Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 101–02 (4th Cir. 2017) (finding that the plaintiff alleged facts from which a reasonable factfinder could conclude that the defendant maliciously subjected him to a "rough ride" and sufficiently alleged an Eighth Amendment excessive force claim sufficient to survive summary judgment); *Brown v. Fortner*, 518 F.3d 552, 560 (8th Cir. 2008) (refusing to provide seatbelt to shackled prisoner, driving recklessly, and ignoring warnings to slow down was evidence that Defendant knew of and disregarded a substantial risk harm to Plaintiff); *Williams v. City of Philadelphia Office of Sheriff*, 2020 WL 315594, at *6-7 (E.D. Pa. Jan. 21, 2020) (collecting cases from the Fourth, Fifth, and Eighth Circuits applying deliberate indifference standard); *see also Pagliaroli v. New Jersey Department of Corrections*, No. 18-12412, 2020 WL 914666, at *6 (D.N.J. Feb. 26, 2020) (explaining same).

Here, the Court finds that Plaintiff has sufficiently alleged that Baez violated Eighth Amendment rights when she intentionally subjected him to a rough ride on November 10, 2015,

while he was standing unsecured in the van. The Court will therefore proceed this claim against Defendant Baez only.

In addition to his Eighth Amendment claims, Plaintiff also alleges that Becker and Burgess retaliated against him for asking them to provide more ventilation and that Baez retaliated against him because he requested to use the restroom. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." At issue is whether Plaintiff has sufficiently pleaded that he was engaged in constitutionally protected conduct.

In the prison context, it is well-established that a written grievance is constitutionally protected activity. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). In *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297, the Third Circuit held that "[t]he Petition Clause embraces a broad range of communications, and the availability of its protections has never turned on a perceived distinction between written and oral speech." The Third Circuit further held that a prisoner's oral complaint to a supervisory corrections officer about religious harassment by a corrections officer was protected by the Petitions Clause. *Id.* at 298-299, called into doubt on other grounds by *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018). In *Pearson v. Welborn*, 471 F.3d 732, 740 (7th Cir. 2006), which was cited approvingly in *Mack,* the Seventh Circuit held that an inmate's oral complaints to prison guards about prison conditions, including the use of shackles in group therapy and denial of yard time, were matters of "public concern" designed to "urge a change of any prison policy." *Id.* (citations and additional quotations omitted), and thus were deserving of First Amendment protection. The Seventh Circuit noted that the plaintiff's

12

complaints "affected all of the prisoners housed there" and were not merely complaints about a personal matter. *See id.* at 740-41.

Here, Plaintiff fails to plead sufficient facts showing that he was orally grieving a matter of public concern when he complained about the inadequate ventilation in the van and his need to use the restroom.[6] The Seventh Circuit, in *Pearson v. Welborn*, 471 F.3d at 74, distinguished between a prisoner's oral complaints that urged a change in a prison policy and those that are personal in nature and unrelated to any prison policy. Plaintiff's complaints were of a personal nature, his desire for more ventilation and his need to use the restroom, which are not matters of public concern protected by the First Amendment. Because Plaintiff fails to allege he was engaged in constitutionally protected conduct, the Court dismisses the First Amendment retaliation claims as to Defendants Becker and Burgess in connection with the complaint about inadequate ventilation, and as to Defendant Baez in connection to the complaint about needing to use the restroom.

The Court also dismisses the conspiracy claims as to all Defendants. To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law "reached an understanding" to deprive him of his constitutional rights. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). Plaintiff alleges in a conclusory fashion that Defendants Becker, Burgess, Baez, and Kempf conspired to retaliate against him for seeking additional ventilation and for asking to use the restroom. Plaintiff does not state a retaliation claim against any of the Defendants and likewise does not provide any facts showing that any of the Defendants reached

---

[6] The Court notes that it does not construe Plaintiff to raise constitutional claims on behalf of other prisoners, which is impermissible.

an understanding to retaliate against him. For these reasons, the Court dismisses the conspiracy claims as to all Defendants.

The Court will also dismiss the supervisory liability claims against Sergeant General, Lanigan, and Norris. "To establish liability under § 1983, each individual defendant 'must have personal involvement in the alleged wrongdoing.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The Third Circuit has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates: (1) "liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiffs rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (internal citations and quotations omitted). "Failure to" claims—failure to train, failure to discipline, or failure to supervise—are generally considered a subcategory of policy or practice liability. *Id.* at 316–17 (citation omitted).

To hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created;

14

(3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Where the plaintiff establishes these elements, liability arises because "a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment where there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." *Barkes*, 766 F.3d at 319-20 (emphasis in original). Deliberate indifference in this context may be demonstrated by either "showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's," or "by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers-Capitol*, 256 F.3d at 136-37 (citing *Sample*, 885 F.2d 1099). "The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor." *Counterman v. Warren Cnty. Corr. Facility*, 176 F. App'x. 234, 240-241 (3d Cir. 2006) (citing *Sample*, 885 F.2d at 1118).

  Here, Plaintiff alleges in a conclusory manner and without supporting facts that Sergeant General knew or should have known about all of his subordinates' alleged misconduct on November 10, 2015, but this bald allegation is insufficient to state a claim for relief under § 1983. With respect to Defendants Lanigan and Norris, Plaintiff alleges generally that he has been abused by corrections officers in the past, that he notified Lanigan and wrote to Norris about the abuse, and that those particular corrections officers were not disciplined. Plaintiff surmises that had Lanigan and/or Norris disciplined the corrections officers involved in the prior

abuse, the corrections officers involved in this incident would not have engaged in misconduct. Plaintiff's allegations are too general to state a claim for supervisory liability. He fails to allege, for instance, that Defendants General, Lanigan, and Norris were on notice prior to November 10, 2015, that there was a pattern of corrections officers injuring Plaintiff or prisoners in general though the practice of "rough riding," or by retaliating for oral grievances, which would suggest there was a need for additional training or supervision. For these reasons, Plaintiff fails to state a claim for relief against any of the supervisory Defendants, and these claims are dismissed.

### d.  The State Law Claims

The Court also dismisses the negligence claims against Defendant Kempf. "To prevail on a claim of negligence a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." *Fernandes v. DAR Dev. Corp.*, 222 N.J. 390, 403–04 (2015) (citing *Townsend v. Pierre*, 221 N.J. 36, 51 (2015)). Plaintiff alleges in a conclusory manner that Kempf had a duty of care to Plaintiff, and breached that duty by remaining at CRAF for three hours during his work hours. Plaintiff's alleged injuries, however, were plainly caused by Baez, and Kempf was not present or otherwise involved. Because Plaintiff's negligence claims against Kempf fails on causation, the Court dismisses this claim. The claim that Defendants were negligent to failing to ensure that the video in the van was working likewise fails on causation and is dismissed.

Plaintiff may also be attempting to state a tort claim for negligent supervision and/or training against one or all of the supervisory Defendants. "To state a claim for negligent supervision, a plaintiff must show that 1) the defendant employer knew or had reason to know of the particular unfitness, incompetence, or dangerous attributes of its employee; 2) the defendant could reasonably have foreseen that such qualities created a risk of harm to other persons; and 3)

16

the defendant's negligence proximately caused the plaintiff's injuries." *Carmichael v. Carmichael*, No. 13-CV-2409 DMC JBC, 2014 WL 347804, at *4 (D.N.J. Jan. 31, 2014) (citing *Smith v. Harrah's Casino Resort of Atl. City*, No. A–0855–12T2, 2013 WL 6508406, at *3 (N.J. Super. Ct. App. Div. Dec. 13, 2013)) (internal quotations omitted). "In order to establish a prima facie case for negligent training, Plaintiff must plead facts sufficient to sustain a claim of negligence. In this case, those elements would be that (1) Defendant owed a duty to Plaintiff to properly train its employees; (2) Defendant breached that duty; (3) Defendant's breach of its duty to train its employees properly proximately caused Plaintiff's injury; and (4) Defendant's breach caused actual damages to Plaintiff." *Sullivan v. Marina Dist. Dev. Co.*, LLC, No. CIV. 10-4204 RBK/JS, 2012 WL 993417, at *4 (D.N.J. Mar. 23, 2012) (citing *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010)).[7] Here, Plaintiff has not provided sufficient facts to suggest that supervision and/or training or lack thereof was a proximate cause of his injuries. Causation is established when a plaintiff proves that his or her injury would not have happened "but for" a defendant's negligence in training or supervising its employees, and that improper training was a substantial factor in bringing about Plaintiff's injury. *See Stroby*, 754 F.Supp.2d at 721. Because Plaintiff has not adequately pleaded a claims for negligent training or supervision, the Court will dismiss these claims against the supervisory Defendants.

### III. CONCLUSION

In conclusion, the Court dismisses the motion to amend as moot in light of the Court's prior Order providing Plaintiff with leave to amend. The Court has screened the Amended Complaint for dismissal pursuant § 1915(e)(2)(B), and will proceed the Eighth Amendment

---

[7] Plaintiff has not clearly alleged any other state law negligence claims and the court does not construe him to raise any intentional tort claims.

"rough ride" claim against Defendant Baez. The remaining federal and state law claims in the Amended Complaint are otherwise dismissed as to all Defendants for the reasons stated herein. An appropriate Order follows.

Dated: October 17, 2022

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge